## PEOPLE *v.* WHEELER.

1. CRIMINAL LAW — APPEAL AND ERROR — CROSS-EXAMINATION — TRIAL.

  In a prosecution under the liquor law it was within the discretion of the trial court whether the prosecutor should be allowed to ask leading questions of a witness who appeared to be ignorant.

2. SAME—INTOXICATING LIQUORS—SALE—EVIDENCE.

    Proof that respondent, who was charged with keeping a
    place where intoxicating liquors were sold contrary to
    law in a county which had adopted prohibition, made
    sales at the time fixed in the information and on one
    other earlier date not definitely established by the testi-
    mony, tended to show a violation of the statute and war-
    ranted the court in submitting to the jury the issues
    whether the defendant kept a place where such liquors
    were sold.

Exceptions before sentence from Hillsdale; Ches-
ter, J. Submitted April 22, 1915. (Docket No. 164.)
Decided June 7, 1915.

Carl Wheeler was convicted of a violation of the
local option law. Affirmed.

*Frank M. Hall,* Prosecuting Attorney, for the
people.

*Paul W. Chase* and *Clayton A. Powell,* for respond-
ent.

McALVAY, J. Respondent was prosecuted and con-
victed in the circuit court for the county of Hillsdale
with having kept in the city of Hillsdale, in said
county, on December 23, 1913, "and for, to wit, sixty
days preceding that date," a place where spirituous
and intoxicating liquors "were sold, kept, and stored
for sale, given away, and furnished, he  *  *  *
not being then and there a druggist or registered
pharmacist," contrary to the provisions of what is
known as the "Local Option Law" of this State.
Upon the trial it was conceded by respondent and his
counsel that on the date charged when this offense was
committed local option was in force within the county
of Hillsdale, and also that during this period respond-
ent was not a druggist or registered pharmacist.

   'he material facts in the case are that on Decem-
ber 23, 1913, three brothers, named Kellar, drove over

in a single buggy to the city of Hillsdale from the farm of their parents, located near Reading, about eight miles distant, where they arrived about 7 o'clock in the evening. They immediately put out the horse and went to a place known as 66 North street in the city of Hillsdale, kept by respondent. They entered by a side door into a room next to a dance hall, where they were met by respondent, who asked one of them if he wanted some "cold tea," and, being answered "Yes," he brought in on a tray three glasses of whisky. He seated them in this room upon two leather benches and served the liquor, which they drank and paid for. Following this, respondent, upon the order of some one of these men, repeated this service of liquor, furnishing them each time the same amount, and received in payment therefor, made by the persons who gave the orders, the sum of 40 cents for each "round." The two witnesses who were sworn testified that the liquor produced and drank by them was whisky. They remained in this place about an hour, and when they had finished drinking this whisky went out and purchased some Christmas presents. One of the brothers, when he had proceeded as far as Howell street, became quite intoxicated and was taken to jail by the sheriff, where he remained all night. The others drove home in safety, and two of them returned to town the next morning, and the three went with the sheriff to the prosecutor's office, and a statement was made by them under oath where they had procured the liquor.

There is evidence in the case tending to show that at least one month before this date two of these brothers, William and James Kellar, were in respondent's place, where they purchased and paid for three or four drinks of whisky each, and on that occasion they also called for "cold tea." The only witnesses who testified on the part of the prosecution were James

and William Kellar. On the part of respondent no witnesses were sworn. At the close of taking the proofs a motion was made on the part of respondent to direct a verdict of not guilty, on the ground that there was not sufficient evidence in the case "as would warrant a jury in bringing in a verdict of guilty on the charge as set forth in the information."

The first assignment of error relates to the redirect examination of the witness William Kellar, in which the witness stated that he had told a story to the officers the next morning in the prosecutor's office, and was asked the following questions:

"*Q.* Now, very soon after that, did you testify in Justice Weaver's court over here?

"*A.* Yes, sir.

"*Q.* Very soon after Christmas?

"*A.* Yes, sir.

"*Q.* At that time your recollection probably would be better than it is now?

"*A.* Yes.

"*Mr. Chase* (counsel for respondent): Just a minute. I insist that the witness answer these questions, and not the prosecuting attorney. They are leading and suggestive.

"*The Prosecutor:* Well, I think on this matter I am entitled to ask them.

"*Mr. Chase:* We object to it.

"*The Court:* I think the answer may stand. The question is somewhat leading, though.

"*Q.* Now, at that time did you testify that you had been in that place a month before that?

"*A.* Yes, I did."

Both before and after this it appeared that this witness was densely ignorant. He testified that he and his brother could neither read nor write, that he had no schooling, and his examination certainly confirms such statement. The only exception taken was that the questions were leading and suggestive. No motion was made to strike out the testimony. We think the court was justified in allowing considerable

latitude in the examination of such a witness. On re-cross-examination, counsel for respondent was allowed to cross-examine as much as he desired. The matter objected to was within the discretion of the court, and in allowing the answer to stand the court committed no error.

The second and third assignments of error may be considered together. They allege error in overruling defendant's motion to be discharged on the ground that there was no evidence to support the charge in the information, and that there was a fatal variance between the averments of the information and the evidence in the case. The first proposition would seem to indicate that it is the contention on the part of respondent that under an information charging the statutory offense of unlawfully keeping a place where intoxicating liquors are sold, stored for sale, given away, or furnished in any local option county, charged as in this case to have been conducted for six months, it requires proof tending to show continuous operation during the period alleged. The evidence in the case tended to show that intoxicating liquors were sold by respondent at his place on December 23, 1913, and also on one earlier date, which is not fixed with certainty. The weight to be given to this evidence was a matter for the jury to determine, and the court in his charge fairly and carefully submitted this question to the jury, to which charge no exception was taken.

The jury, from the verdict rendered in the case, evidently believed the testimony of these witnesses, and in our opinion the verdict was justified. We are satisfied that the evidence supported the charge that respondent was guilty of keeping a place in the city of Hillsdale where intoxicating liquors were sold contrary to the provisions of the local option law. We find no error in the case.

The conviction is therefore affirmed, and the case is remanded to the circuit court, to take such steps as may be necessary to carry such conviction into effect.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.